UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

---

                         x

In re DORAL FINANCIAL CORPORATION   :    Civil Action No. 3:14-cv-01393-GAG
SECURITIES LITIGATION                    :

---

                         :    <u>CLASS ACTION</u>

                         :

This Document Relates To:          :    **CO-LEAD PLAINTIFFS' MOTION AND**
                         :    **MEMORANDUM OF LAW FOR FINAL**
      ALL ACTIONS.             :    **APPROVAL OF CLASS ACTION**
                         :    **SETTLEMENT AND PLAN OF**
                         :    **ALLOCATION AND FINAL**
                         :    **CERTIFICATION OF THE CLASS FOR**
                         :    **SETTLEMENT PURPOSES**
                         :
                         :

---

                         x

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ..................................................................1

II.    APPLICABLE STANDARDS GENERALLY FAVOR APPROVAL OF CLASS ACTION SETTLEMENTS .........................................................................3

III.   THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL ..................................4

    A.    The Settlement Was Reached After Significant Investigation and Is the Product of Arms'-Length Negotiations Among Experienced Counsel ..................4

    B.    The Risk, Complexity, and Expense of Continued Litigation Favors Final Approval .........................................................................................6

    C.    Comparing the Proposed Settlement To the Likely Result of Continued Litigation Weighs in Favor of Final Approval ........................................8

    D.    Co-Lead Plaintiffs Had Sufficient Information to Make Informed Decisions About Settling this Case.........................................................9

    E.    The Favorable Reaction of the Class Supports Approval.....................................10

IV.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED .........................................................11

V.    NOTICE TO THE CLASS SATISFIED ALL THE REQUIREMENTS OF RULE 23 AND DUE PROCESS .........................................................................13

VI.   FINAL CLASS CERTIFICATION FOR PURPOSES OF THE PROPOSED SETTLEMENT IS APPROPRIATE .........................................................14

    A.    The Class Is Sufficiently Numerous .................................................15

    B.    Common Questions of Law or Fact Exist...........................................15

    C.    Co-Lead Plaintiffs' Claims Are Typical of Those of the Class .............................15

    D.    Co-Lead Plaintiffs Are Adequate Class Representatives......................................16

    E.    The Proposed Class Satisfies Rule 23(b)(3) ......................................16

        1.    Common Questions of Law and Fact Predominate Over Individual Questions..................................................................17

        2.    Superiority Is Satisfied.................................................17

VII.  CONCLUSION...........................................................................18

- i -

# TABLE OF AUTHORITIES

**Page**

CASES

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................. 14, 15, 16, 17

*Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) .............................................................. 9

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ...................................................................... 15

*Bussie v. Allmerica Fin. Corp.*,
  50 F. Supp. 2d 59 (D. Mass. 1999) ............................................................. 5, 10

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir.1974) .......................................................................... 3

*City of Providence v. Aeropostale, Inc.*,
  No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) .................. 11

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
  100 F.3d 1041 (1st Cir. 1996) ..................................................................... 4

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
  177 F.R.D. 54 (D. Mass. 1997) .................................................................... 13

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ................................................................................. 12

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ................................................................................. 13

*Greenspun v. Bogan*,
  492 F.2d 375 (1st Cir. 1974) ...................................................................... 4, 13

*Hochstadt v. Boston Sci. Corp.*,
  708 F. Supp. 2d 95 (D. Mass. 2010) ............................................................ 11, 12

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................. 12

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ........................................................... 12

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ..................... 6, 9

*In re Cabletron Sys., Inc. Sec. Litig.*,
  239 F.R.D. 30 (D.N.H. 2006) .................................................................. 10, 11, 12, 14

**Page**

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
No. MDL 09-2067-NMG, 2014 WL 4446464 (D. Mass. Sept. 8, 2014) ......................... 9

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
216 F.R.D. 197 (D. Me. 2003) ................................................................... 3, 10

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) .............................................................. 9, 11

*In re Lease Oil Antitrust Litig. (No. II)*
, 186 F.R.D. 403 (S.D. Tex. 1999) .................................................................. 14

*In re Lupron Mktg. & Sales Practices Litig.*,
228 F.R.D. 75 (D. Mass. 2005) ................................................................... 3, 4

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
No. 94 Civ. 3996, 2000 WL 37992 (S.D.N.Y. Jan. 18, 2000) ........................... 12

*In re Penthouse Executive Club Comp. Litig.*,
No. 10 CIV. 1145 KMW, 2013 WL 1828598 (S.D.N.Y. Apr. 30, 2013) .................... 4

*In re Puerto Rican Cabotage Antitrust Litig.*,
269 F.R.D. 125 (D.P.R. 2010) ...................................................................... 15

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass 2005) ............................................................... passim

*In re StockerYale, Inc. Sec. Litig.*,
No. 1:05CV00177-SM, 2007 WL 4589772 (D.N.H. Dec. 18, 2007) .................. 6, 10, 14

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................................. 7

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007) ......................................................... passim

*In re Volkswagen & Audi Warranty Extension Litig.*,
273 F.R.D. 349 (D. Mass. 2011) ........................................................ 15, 16, 17

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................. 8

*McLaughlin v. Liberty Mut. Ins. Co.*,
224 F.R.D. 304 (D. Mass. 2004) ................................................................... 15

*Payne v. Goodyear Tire & Rubber Co.*,
216 F.R.D. 21 (D. Mass. 2003) ................................................................ 15, 16

334939.1 DORAL

**Page**

PSLRA. The Plan of Allocation is set forth in the
    Notice at pp. ........................................................................................................... 12

*Rodrigues v. Members Mortg. Co.*,
    226 F.R.D. 147 (D. Mass. 2005) ............................................................... 15, 16

*Rolland v. Cellucci*,
    191 F.R.D. 3 (D. Mass. 2000) ...................................................................... 4, 5

*U.S. v. Comunidades Unidas Contra La Contaminacion*,
    204 F.3d 275 (1st Cir. 2000) ............................................................................ 3

*U.S. v. Davis*,
    261 F.3d 1 (1st Cir. 2001) ................................................................................. 3

*Voss v. Patrick*,
    592 F.3d 242 (1st Cir. 2010) ......................................................................... 3, 4

*Walsh v. Popular, Inc.*,
    839 F. Supp. 2d 476 (D.P.R. 2012) ................................................................ 11


STATUTES

15 U.S.C. § 78u-4(a)(7) .............................................................................................. 13


OTHER AUTHORITIES

Fed. R. Civ. P. 23(a)(1) ............................................................................................. 15

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................. 13, 14

Federal Rule of Civil Procedure 23 ................................................... 3, 14, 15, 17

Federal Rule of Civil Procedure 23(e) ................................................................ 1, 3

Rule 23(a) .................................................................................................................... 16

Rule 23(a)(2) ............................................................................................................... 15

Rule 23(a)(3) ............................................................................................................... 15

Rule 23(a)(4) ............................................................................................................... 16

Rule 23(b)(3) ........................................................................................................ 16, 17

- iv -

**Page**

Rule 23(e)(1) ................................................................................................................... 13

**TO:    THE HONORABLE COURT**

Court-appointed Co-Lead Plaintiffs, Jensine Andresen, Ken M. Nimmons and Mordechai Hakim (together, "Co-Lead Plaintiffs"), by and through their undersigned counsel, respectfully move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for the Court to: (1) grant final approval of the proposed Settlement and Plan of Allocation, which the Court preliminarily approved on April 21, 2016 (Dkt. No. 107, the "Preliminary Approval Order"); (2) finally certify the proposed Class for purposes of the Settlement; (3) find that notice to the Class satisfied due process; and (4) enter the proposed Judgment and Order of Dismissal with Prejudice of this Action. The Settling Defendants, Glen R. Wakeman and Robert E. Wahlman, do not oppose this motion.

## I.    PRELIMINARY STATEMENT

Co-Lead Plaintiffs are pleased to present to the Court a settlement in this Action for $7 million in cash, plus interest, for the benefit of the Class (the "Settlement"),[1] which represents approximately 22% of the total maximum damages available in this case. Co-Lead Plaintiffs believe that the Settlement represents an excellent result and recovery for the Class. As detailed in the accompanying Declaration of Robert M. Rothman[2] and below, the Settlement is the result of hard-fought litigation and arm's-length negotiations by well-informed counsel, and was facilitated a well-regarded mediator who has extensive experience with securities class actions.

The Settlement represents the culmination of approximately two years of contested litigation against Doral Financial Corporation ("Doral" or the "Company") and certain of its officers.[3] By the time the agreement to settle was reached, Lead Counsel had spent significant time and resources

---

[1]    All capitalized terms not defined herein have the same meanings set forth in the Stipulation of Settlement, executed on February 29, 2016. Dkt. No. 103-1.

[2] A more detailed overview of Co-Lead Plaintiffs' claims, the substantial efforts by Lead Counsel, and the negotiations leading to this Settlement are detailed in the accompanying Declaration of Robert M. Rothman in Support of: (a) Final Approval of Settlement; (b) Final Approval of Plan of Allocation of Settlement Proceeds; (c) Award of Attorneys' Fees and Expenses; and (d) Award of Reasonable Costs and Expenses Incurred by Lead Plaintiffs (the "Rothman Decl.").

[3]    On March 11, 2015, Doral filed a Chapter 11 bankruptcy petition, resulting in an automatic stay of this Action against it. On July 22, 2015, the Court dismissed various Doral officers from the litigation, but upheld the Complaint as against the Settling Defendants. *See* Dkt. No. 69 at 62.

analyzing and litigating the legal and factual issues in the Action. In preparing and litigating their case, Co-Lead Plaintiffs and Lead Counsel conducted an extensive independent investigation of the Company, followed by full briefing on the motion to dismiss. Rothman Decl. ¶¶31-48. Co-Lead Plaintiffs' belief in the strength of their case was affirmed by the Court's denial, in part, of Defendants' motion to dismiss. Dkt. No. 69.

Despite Plaintiffs' confidence in their case, however, the Court's order granting in part and denying in part the motion to dismiss highlighted certain weaknesses. Rothman Decl. ¶¶53-54 (questioning scienter relating to Tax Receivable-related claims and finding a failure to state § 20(a) liability). Indeed, a successful outcome at summary judgment and trial was not guaranteed. For example, the parties vigorously disagreed on Co-Lead Plaintiffs' ability to prove that the Settling Defendants misrepresented the Company's regulatory compliance, artificially inflated its capital levels, and that they did so with the requisite scienter to sustain a finding of liability. Settling Defendants further contested Co-Lead Plaintiffs' allegations of loss causation and ability to prove compensable damages. Accordingly, were the litigation to continue, Plaintiffs and the Class faced significant risks associated with both liability and damages, not to mention costly and lengthy appeals that would likely follow *if* Plaintiffs successfully proved liability and damages at trial.

Cognizant of the risks and strengths of their respective positions, the Parties engaged in an extensive mediation process with the aid of mediator David Geronemus, Esq. of JAMS. This process ultimately resulted in the Settlement currently presented to the Court for final approval. Rothman Decl. ¶¶56-60. Lead Counsel and Co-Lead Plaintiffs have had a sufficient opportunity to assess and develop the merits of their case and have a full understanding and appreciation of the strengths and weaknesses of their case. With this understanding, Lead Counsel firmly believe that the $7 million Settlement – which represents a recovery of approximately 22% of the *maximum* estimated damages including Tax Receivable-related claims (Rothman Decl. ¶89) – is fair, reasonable, and in the best interests of the Class. Moreover, the Plan of Allocation, which Lead Counsel developed with the assistance of an expert damages consultant, is a fair and reasonable method for distributing the Net

Settlement Fund to Class Members. Significantly, to date, Co-Lead Plaintiffs have received no exclusions from the Class or objections to any part of the Settlement.

Finally, the proposed Class meets all of the elements for certification under Federal Rule of Civil Procedure 23. Accordingly, Co-Lead Plaintiffs respectfully request that the Court grant final approval of this Settlement and Plan of Allocation, and grant final certification of the Class.

## II.   APPLICABLE STANDARDS GENERALLY FAVOR APPROVAL OF CLASS ACTION SETTLEMENTS

In determining whether to approve the Settlement, the Court should be guided by the "strong public policy in favor of settlements" over continued litigation, particularly with complex actions. *See, e.g.*, *U.S. v. Davis*, 261 F.3d 1, 27 (1st Cir. 2001);[4] *U.S. v. Comunidades Unidas Contra La Contaminacion*, 204 F.3d 275, 280 (1st Cir. 2000) (same). To grant final approval of a class action settlement, the court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); *Voss v. Patrick*, 592 F.3d 242, 251 (1st Cir. 2010) (same).

While the First Circuit has not espoused any single test for determining whether a proposed settlement is fair, reasonable, and adequate,[5] courts within this commonly reference factors identified by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974) (*overruled on other grounds by Missouri v. Jenkins*, 491 U.S. 274, 229 (1989)). *See Lupron*, 228 F.R.D. at 93. Courts in this Circuit have further distilled the *Grinnell* factors into a more concise list, examining:

> (1) risk, complexity, expense and duration of the case; (2) comparison of the proposed settlement with the likely result of continued litigation; (3) reaction of the class to the settlement; (4) stage of the litigation and the amount of discovery completed; and (5) quality of counsel and conduct during litigation and settlement negotiations.

*In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259-60 (D.N.H. 2007); citing *Compact Disc*, 216 F.R.D. at 206.

---

[4] Internal citations are omitted and emphasis is added throughout, unless otherwise noted.

[5] *See, e.g.*, *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 93 (D. Mass. 2005) ("[T]he First Circuit has not established a formal protocol for assessing the fairness of a settlement…."); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003) ("There is no single test in the First Circuit for determining fairness, reasonableness and adequacy of a proposed class action settlement.").

- 3 -

Moreover, in evaluating whether a settlement is fair, reasonable, and adequate, courts should balance the benefits of settlement and the risks of continued litigation. *Patrick*, 592 F.3d at 251. "The court cannot, and should not, use as a benchmark the highest award that could be made to the plaintiff[s] after full and successful litigation of the claim[s]." *Rolland v. Cellucci*, 191 F.R.D. 3, 15 (D. Mass. 2000). As the First Circuit has observed:

> [a]ny settlement is the result of a compromise – each party surrendering something in order to prevent unprofitable litigation, and the risks and costs inherent in taking litigation to completion.

*Greenspun v. Bogan*, 492 F.2d 375, 381 (1st Cir. 1974); *see also Compact Disc*, 216 F.R.D. at 211 ("I am not to prejudge the merits of the case . . . and I am not to second-guess the settlement; I am only to determine if the parties' conclusion is reasonable."); *Lupron*, 228 F.R.D. at 97 (the court should not "hypothesize about larger amounts that might have been recovered.").

In this case, an examination of the foregoing factors firmly demonstrates that the Settlement is fair, reasonable, and adequate to the Class, and should be approved by the Court.

## III.   THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

### A.   The Settlement Was Reached After Significant Investigation and Is the Product of Arms'-Length Negotiations Among Experienced Counsel

A presumption of fairness attaches to a settlement when the parties have negotiated the terms at arms'-length and have conducted sufficient discovery. *Lupron*, 228 F.R.D. at 93 (citing *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)). Moreover, where, as here, the settlement was reached with the assistance of an experienced mediator, there is "a presumption that the settlement achieved meets the requirements of due process." *In re Penthouse Executive Club Comp. Litig.*, No. 10 CIV. 1145 KMW, 2013 WL 1828598, at *2 (S.D.N.Y. Apr. 30, 2013) ("the assistance of [an] experienced mediator[], David Geronemus of JAMS . . . , reinforces that the Settlement Agreement is non-collusive").

At the time of the Settlement, all Parties were in an excellent position to understand the strengths and weaknesses of their respective positions. As described above, Lead Counsel conducted

a detailed investigation of the Company, interviewed witnesses with information about Doral's business and accounting practices, thoroughly researched the law pertinent to the claims and defenses asserted, followed the litigation between Doral and the Puerto Rico Treasury Department (which complicated Co-Lead Plaintiffs' case), and consulted accounting and damages experts to aid in fully developing Plaintiffs' claims. Rothman Decl. ¶¶5, 33-36, 48, 113-14.

The Parties' settlement negotiations also included the exchange of detailed mediation statements followed by a formal all-day mediation session under the guidance of Mr. Geronemus, a highly respected mediator with substantial experience in mediation of securities fraud lawsuits. Rothman Decl. ¶¶56-59. Following the mediation, Mr. Geronemus made a mediator's proposal that the parties settle the case for $7 million. ¶60. Lead Counsel negotiated the Settlement and accepted the mediator's proposal with the benefit of extensive analysis of the applicable law and the relevant facts, and only after considering the strengths and weaknesses of the claims asserted in the Action and the significant benefits to the Class.

Moreover, the judgment of experienced and well-informed class counsel should be accorded great weight by the Court. *Cellucci*, 191 F.R.D. at 10 ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) ("The Court's fairness determination also reflects the weight it has placed on the judgment of the parties' respective counsel, who are experienced attorneys and have represented to the Court that they believe the settlement provides to the Class relief that is fair, reasonable and adequate."). Lead Counsel here have extensive experience in securities class action litigation and have negotiated numerous class action settlements that have been approved by courts around the country. Rothman Decl. ¶¶132-34; Declaration of Kara M. Wolke ("Wolke Decl."), at Ex. B (attaching Glancy firm résumé).

In sum, the thoroughness of Lead Counsel's investigation, the arms'-length nature of the settlement negotiations which were mediated by a respected neutral, and the experience of Co-Lead Counsel all support granting final approval of the Settlement in this case .

- 5 -

**B.    The Risk, Complexity, and Expense of Continued Litigation Favors Final Approval**

While Co-Lead Plaintiffs believe that their case is strong and that they would prevail at summary judgment and trial, they recognize that they face formidable obstacles to recovery with respect to both liability and damages, which would be complex, risky, and costly to prove at trial. *See In re StockerYale, Inc. Sec. Litig.*, No. 1:05CV00177-SM, 2007 WL 4589772, at *3 (D.N.H. Dec. 18, 2007) (this factor "captures the probable costs, in both time and money, of continued litigation"). Securities class actions are "notorious[ly] complex[]" and "[t]he difficulty of establishing liability is a common risk of securities litigation." *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *8, *11 (S.D.N.Y. Apr. 6, 2006).

The Settlement provides an immediate benefit to the Class members that, when balanced against the potential costs and risks associated with continued litigation of this case, supports a finding that the Settlement is fair, reasonable and adequate. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 74 (D. Mass 2005) ("Although fully litigating the claims through trial could possibly result in a higher recovery, the settlement represents a necessary compromise between inherent risks of doing so and a guaranteed cash recovery.").

For example, Settling Defendants have adamantly denied liability and consistently maintained that Co-Lead Plaintiffs would be unable to present evidence demonstrating that they acted with the scienter required by the PSLRA. Rothman Decl. ¶¶38-39. The Court partially agreed with Defendants, finding that while Co-Lead Plaintiffs adequately pled scienter with respect to their ALLL-related claims, they failed to do so with respect to their Tax Receivable-related claims. *Id.* at 52-53. Moreover, even though Co-Lead Plaintiffs were partially successful at the motion to dismiss phase, at trial, the Settling Defendants would attempt to convince the jury that (i) they fully disclosed the risks related to material weaknesses in its controls related to the valuation of its allowance for loan and lease losses, and (ii) rather than cover anything up, they worked diligently with auditors and regulators to remedy the issues. *Id.* ¶38.

Even if Co-Lead Plaintiffs could establish falsity and scienter through summary judgment and at trial, there were substantial hurdles with respect to establishing loss causation and damages. The Settling Defendants would contend that the Court's motion to dismiss order severely curtailed the recoverable damages and, even if Co-Lead Plaintiffs succeeded on the merits, Co-Lead Plaintiffs' best case scenario damages would be nominal. At trial, the Settling Defendants likely would also contend that any declines in the Company's stock price were based on information already previously disclosed to the public and further challenge the methodology Co-Lead Plaintiffs used to calculate damages.

Thus, proving loss causation and damages "would likely involve a confusing 'battle of the experts' over damages." *Tyco*, 535 F. Supp. 2d at 260-61. While Co-Lead Plaintiffs would present expert testimony to argue that the stock price declines were attributable to corrections of the alleged misstatements and omissions concerning Doral's regulatory compliance and capital levels, establishing loss causation and damages, there is little doubt that the Settling Defendants would proffer their own expert to testify against loss causation with respect to most or all of the price declines. There is no way to know whose expert a jury would credit, and if "the jury chose to embrace the most conservative estimate of damages, then the ultimate award might turn out to be less than the proposed settlement." *Tyco*, 535 F. Supp. 2d at 261; *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008) ("In this battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found" by the jury). Conceivably, a jury could find that there were no damages or that damages were only a fraction of the amount that Co-Lead Plaintiffs sought. Rothman Decl. ¶¶93-95. Moreover, the Settling Defendants would likely appeal any verdict in Co-Lead Plaintiffs' favor and those appeals would delay the resolution of the case and further increase the risk of recovery for the Class. *Tyco*, 535 F. Supp. 2d at 261.

Finally, as the Court cautioned in its July 22, 2015 motion to dismiss order, there was the very real prospect the Class would not get paid even after obtaining a judgment. Dkt. No. 69, at 62. Because Doral filed for bankruptcy, insurance coverage is the only viable funding for a settlement or

judgement. Without an operating company as a defendant, "there is presumably no deep pocket for the putative class to recover, should a judgment befall in its favor." *Id*. As a result, even if the Class were to prevail at trial, it is unlikely for the Class to achieve a higher recovery. Rothman Decl. ¶96.

In sum, the Settlement provides a guaranteed recovery for each member of the Class who submits an approved claim and avoids the significant risks of continued litigation, thus further favoring final approval of the Settlement.

### C. Comparing the Proposed Settlement To the Likely Result of Continued Litigation Weighs in Favor of Final Approval

The Settlement provides $7 million, plus interest, for the benefit of the Class. Co-Lead Plaintiffs estimate that this represents approximately 22% of the *maximum* recoverable damages, assuming that the Court and jury accepted *all* of Co-Lead Plaintiffs' damages theory. Rothman Decl. ¶89. In light of the risks, costs, and delays that would result from proceeding to trial and likely appeals of any trial verdict, the Settlement provides an excellent recovery for the members of the Class that is well within the range of reasonableness to warrant approval.

While "[a] fine-tuned equation by which to determine the reasonableness of the size of a settlement fund does not exist," *Relafen*, 231 F.R.D. at 73, courts routinely approve settlements recovering a far lower percentage of estimated damages. *See* Svetlana Starykh and Stefan Boettrich, *Recent Trends in Securities Class Action Litigation: 2015 Full-Year Review* (NERA Jan. 25, 2016) at 33, Fig. 29 (the median ratio of settlements between 1996 and 2015 to investment losses was 8.6% for cases with investor losses of between $20 and $49 million); at 34, Fig. 30 (the median ratio of settlements to investor losses in 2015 was 1.6%). Rothman Decl. ¶89.

Moreover, weighing "[t]he 'best possible' recovery necessarily assumes Plaintiffs' success on both liability and damages covering the full Class Period alleged in the Complaint *as well as the ability of Defendants to pay the judgment*." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 365 (S.D.N.Y. 2002) (emphasis added). The Court's order granting in part and denying in part the motion to dismiss provides further support for the Settlement, recognizing that:

> Although Plaintiff's case proceeds exclusively against defendants Wakeman and
> Wahlman, they should nonetheless consider that, at this juncture, Doral is bankrupt.

> Contrary to earlier similar class action cases before the undersigned such as those involving Banco Popular and First Bank, there is presumably no deep pocket for the putative class to recover, should a judgment befall in its favor. Thus, the court highly suggests that Plaintiffs at this time strongly consider proceeding individually versus requesting that the class be certified. More so, the court strongly suggests that the parties seriously consider settlement alternatives at this time, once the case is referred to the Magistrate Judge Bruce J. McGiverin for the initial scheduling conference.

Dkt. No. 69 at 62.

As discussed above, insurance coverage is the only viable funding for a settlement or judgment, which would have been significantly depleted if this Action were to proceed to the discovery phase, class certification, summary judgment and to trial. Given the Settlement's excellent recovery amount and the limited pool of funds from which the Class could recover if successful at trial, this factor strongly weighs in favor of the Settlement.

### D. Co-Lead Plaintiffs Had Sufficient Information to Make Informed Decisions About Settling this Case

This factor questions "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012). "The threshold necessary to render the decisions of counsel sufficiently well informed, … is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012); *see also AOL Time Warner*, 2006 WL 903236, at *10 (the parties "need not have engaged in extensive discovery as long as they have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the settlement"); *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, No. MDL 09-2067-NMG, 2014 WL 4446464, at *4 (D. Mass. Sept. 8, 2014) ("[d]iscovery is sufficient if it enables representatives of the parties to act 'intelligently' when negotiating a settlement.").

- 9 -

During the PSLRA-mandated discovery stay, Lead Counsel conducted a thorough review of Doral's SEC filings, press releases, analyst reports during the Class Period, and other publicly-available information relating to Doral, including Doral's consent order with regulators, litigation between Doral and the Puerto Rico Treasury Department, and Doral's bankruptcy proceedings. Co-Lead Plaintiffs also retained a private investigator to interview former employees knowledgeable about the claims at issue, an accounting expert, and a damages expert to analyze loss causation issues. Lead Counsel prepared extensive briefs and other papers relating to the Action, including an opposition and supporting sur-reply to the motion to dismiss the Amended Complaint. Finally, the parties engaged in the exchange of detailed mediation statements focusing on liability, loss causation, damages, and insurance coverage, and discussion under the guidance of an experienced mediator. *See, e.g.*, Rothman Decl. ¶¶33-48, 57-58. As a result, Co-Lead Plaintiffs and Lead Counsel engaged in sufficient investigation to thoroughly understand the claims, merits, and weaknesses of the Action when agreeing to the proposed Settlement.

E.      **The Favorable Reaction of the Class Supports Approval**

To date, no objections or exclusions have been received. This highly favorable reaction of the members of the Class to the Settlement also supports its approval. While not dispositive, "[t]he number of requests for exclusion from the settlement, as well as the number and substance of objections filed…constitutes strong evidence of fairness of proposed settlement and supports judicial approval." *Allmerica Fin. Corp.*, 50 F. Supp. 2d at 77 (finding a 0.003% objection rate and 0.05% requesting exclusion was *de minimis*); *In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 35-36 (D.N.H. 2006) (Court approved class action settlement after no objections and three opt-outs); *Compact Disc*, 216 F.R.D. at 211 (finding 11 objections representing 22 class members and 121 opt-outs "miniscule" where over 3.5 million class members submitted claims).

Moreover, a reflected in their concurrently-filed declarations, Co-Lead Plaintiffs fully support the Settlement as well. *See StockerYale*, 2007 WL 4589772, at *3 ("The Court finds it significant that the Lead Plaintiffs are fully in support of the settlement.").

334939.1 DORAL

Pursuant to the Preliminarily Approving Order, on April 29, 2016, the Claims Administrator caused a total of 1,951 Notice Packets to be mailed to potential Class Members, including Brokers and Other Nominees. *See* Declaration of Jennifer M. Veitengruber Regarding Notice Dissemination and Publication ("Veitengruber Decl."), ¶5. Including names and addresses of potential Class Members thereafter provided by Brokers and Other Nominees, in the aggregate, approximately 10,642 Notice Packets have been mailed to potential Class Members. *Id.* at ¶7. The Claims Administrator also caused the Summary Notice to be published in *The Wall Street Journal* on May 8, 2016, 2016 and transmitted over the *PRNewswire* on May 5, 2016. *Id.* at ¶8. To date, ***no objections*** to the Settlement or Lead Counsel's application for an award of attorneys' fees and expenses have been served on the Claims Administrator or Lead Counsel, and ***no requests for exclusion*** from the Settlement have been received. *Id.* at ¶¶11-12; Rothman Decl. at ¶¶13, 74. Accordingly, the Class Members' positive reaction to the Settlement supports final approval.

## IV.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED

The Court's inquiry regarding a proposed plan of allocation "is merely whether the plan is fair and reasonable." *Walsh v. Popular, Inc.*, 839 F. Supp. 2d 476, 482 (D.P.R. 2012); *Hochstadt v. Boston Sci. Corp.*, 708 F. Supp. 2d 95, 109 (D. Mass. 2010) ("As with the settlement itself, a plan of allocation must be fair, reasonable, and adequate."). A plan of allocation is fair and reasonable as long as it has a "reasonable, rational basis." *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *10 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). A reasonable plan of allocation "may consider the relative strength and values of different categories of claims." *IMAX*, 283 F.R.D. at 192; *see also Cabletron*, 239 F.R.D. at 35 (approving a plan of allocation that took into consideration "the strengths and weaknesses of the claims of the various types of class members"). Therefore, a plan of allocation "which compensates class members according to the nature and timing of their [Doral] securities transactions, has a reasonable basis." *Tyco*, 535 F. Supp. 2d at 262.

Here, the Plan of Allocation was developed by Lead Counsel in consultation with their professional damages consultant and reflects the requirements for establishing damages promulgated by *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) and complies with the PSLRA. The Plan of Allocation is set forth in the Notice at pp. 11-15 and summarized in ¶¶115-21 of the Rothman Declaration. "When evaluating the fairness of a Plan of Allocation, courts give weight to the opinion of qualified counsel." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014). The Plan of Allocation calculates and allocates damages consistent with Co-Lead Plaintiffs' damage analyses, and also weighs the strength of the various claims at different times during the Class Period. *See Cabletron*, 239 F.R.D. at 35; *Tyco*, 535 F. Supp. 2d at 262.

Lead Counsel believes that the proposed Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Class Members who suffered losses as result of the conduct alleged in the Action, and their opinion as to allocation is entitled to "considerable weight" by the Court in deciding whether to approve the plan. *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001); *see also In re Nasdaq Mkt.-Makers Antitrust Litig.*, No. 94 Civ. 3996, 2000 WL 37992, at *2 (S.D.N.Y. Jan. 18, 2000) (holding that the "small number of objections to the Proposed Plan" was entitled to "substantial weight" in approving the plan). As stated above, to date, no objections to the Plan of Allocation have been received, suggesting that the Class also finds the Plan of Allocation to be fair and reasonable.

Moreover, similar plans have repeatedly been approved by courts within this Circuit. *See, e.g.*, *Boston Sci. Corp.*, 708 F. Supp. 2d at 110 (approving a plan allocating settlement funds to members based on when they bought and sold common in relation to certain disclosure events); *Cabletron*, 239 F.R.D. at 35 (approving a plan where claimants would "receive a pro rata share of the Net Settlement Fund").

In sum, the Plan of Allocation represents a fair and equitable method for allocating the Net Settlement Amount among  Class Members, and it merits final approval from the Court.

**V.     Notice to the Class Satisfied all the Requirements of Rule 23 and Due Process**

The Notice provided to the Class satisfied the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974). The Notice also satisfied Rule 23(e)(1), which requires that notice of a settlement be directed "in a reasonable manner to all class members who would be bound" by the settlement, *see* Fed. R. Civ. P. 23(e)(1), and that the notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them." *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 61 (D. Mass. 1997) (quoting *Bogan*, 492 F.2d at 382).

Both the substance of the Notice and the method of dissemination to potential members of the Class satisfies these standards. The Notice program was carried out by Garden City Group ("GCG"), a nationally-recognized claims administrator. The Notice contains the information required by Fed. R. Civ. P. 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7), including: (i) an explanation of the nature of the Action and claims asserted; (ii) the definition of the Class; (iii) a description of the key terms of the Settlement, including the consideration amount and the releases to be given; (iv) the Plan of Allocation; (v) the Parties' reasons for proposing the Settlement; (vi) a description of the attorneys' fees and expenses that will be sought; (vii) an explanation of Class Members' right to request exclusion from the Class and to object to the Settlement, the Plan of Allocation or the requested attorneys' fees or expenses; and (viii) notice of the binding effect of a judgment on Class Members. The Notice also provides instructions for submitting a Claim Form in order to be eligible to receive a distribution from the Net Settlement Fund, relevant deadlines, and contact information including a dedicated toll-free telephone hotline and link to the settlement website.

In accordance with the Court's Preliminary Approval Order, GCG has mailed over 10,600 copies of the Notice by first-class mail to potential members of the Settlement Class and their nominees. *See* Veitengruber Decl. ¶7. In addition, GCG caused the Summary Notice to be published

- 13 -

in *The Wall Street Journal* on May 8, 2016 and transmitted over the *PR Newswire* on May 5, 2016. *Id.* at ¶8. Copies of the Notice, Claim Form, Preliminary Approval Order, and Stipulation were made available on the Settlement website maintained by GCG, www.DoralSecuritiesLitigation.com. *Id.* at ¶10. This combination of individual first-class mail to all Class Members who could be identified with reasonable effort, supplemented by notice in a widely circulated business publication, transmitted over the newswire, and set forth on a dedicated website, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *StockerYale*, 2007 WL 4589772, at *7 (finding that due process was satisfied where notice mailed by first class mail to all class members who could be identified with reasonable effort and summary notice was published once in *Investor's Business Daily* and over *PR Newswire*); *Cabletron*, 239 F.R.D. at 35-36 (combination of individually mailed notice packets, published notice in *The Wall Street Journal*, a dedicated website, and a dedicated phone hotline met the notice standard).

## VI.    FINAL CLASS CERTIFICATION FOR PURPOSES OF THE PROPOSED SETTLEMENT IS APPROPRIATE

The Court's Preliminary Approval Order preliminarily certified for settlement purposes the following Class: "All persons and entities who purchased or otherwise acquired Doral common stock between April 2, 2012 and May 1, 2014, inclusive, and were allegedly damaged thereby."[6]

If all of Rule 23's requirements are met, a class may be certified for purposes of a settlement. *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997); *Relafen*, 231 F.R.D. at 68. "[T]he district court may take the proposed settlement into consideration when examining the question of certification" and, when determining whether to certify a class for settlement purposes only, "'a district court [] need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.'" *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 418

---

[6] Excluded from the Class are Defendants; the other officers and directors of Doral during the Class Period; members of the immediate families of any excluded person; the legal representatives, heirs, successors, or assigns of any excluded person or entity; and any entity controlled by, or in which Defendants have or had a controlling interest. Also excluded from the Class is any Class Member that validly and timely requests exclusion, in accordance with the requirements set by the Court.

(S.D. Tex. 1999) (quoting *Amchem*, 521 U.S. at 620-21). The Class here easily satisfies all of Rule 23's requirements such that final certification of the Class should be granted.

### A.    The Class Is Sufficiently Numerous

A class is sufficiently numerous when joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). There is no fixed number of class members which either compels or precludes the certification, but courts have found that classes consisting of 40 members are generally sufficient to establish numerosity. *See McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 307 (D. Mass. 2004) (finding that a 51 person class was above the "critical mass of 40" members). District courts "'may draw reasonable inferences from the facts presented to find the requisite numerosity.'" *In re Volkswagen & Audi Warranty Extension Litig.*, 273 F.R.D. 349, 352 (D. Mass. 2011). Here, with over 10,600 individual Notices sent to potential Class Members throughout the country, the numerosity requirement is easily satisfied.

### B.    Common Questions of Law or Fact Exist

The commonality requirement of Rule 23(a)(2) is satisfied when common questions of law or fact are present. *See Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003). It is not necessary that all issues of fact and law be common. *Volkswagen*, 273 F.R.D. at 352; *Relafen*, 231 F.R.D. at 69. In fact, only a single common question of fact or law is necessary to meet this requirement. *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 131 (D.P.R. 2010). Here, the Complaint spells out a "common course of conduct," the hallmark of Rule 10b-5 securities class actions. Indeed, where, as here, a class of stock purchasers is defrauded over a period of time by similar misrepresentations due to defendants' common course of conduct, cases are regularly certified. *See, e.g.*, *Blackie v. Barrack*, 524 F.2d 891, 904-05 (9th Cir. 1975). Rule 23(a)(2) is therefore satisfied.

### C.    Co-Lead Plaintiffs' Claims Are Typical of Those of the Class

Co-Lead Plaintiffs' claims are typical of Class Members' claims. Under Rule 23(a)(3), claims are typical where "'named plaintiffs' claims arise from the same course of conduct that gave rise to the claims of the absent [class] members.'" *Rodrigues v. Members Mortg. Co.*, 226 F.R.D.

- 15 -

147, 151 (D. Mass. 2005). *See also Volkswagen*, 273 F.R.D. at 352; *Payne*, 216 F.R.D. at 26. "For purposes of demonstrating typicality, '[a] sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Relafen*, 231 F.R.D. at 69.

In this case, the typicality requirement is met. There is no conflict or antagonism between Co-Lead Plaintiffs' interests and those of the Class. Like all of the Class Members, Co-Lead Plaintiffs purchased Doral securities at prices allegedly artificially inflated by the Settling Defendants' materially false and misleading statements or omissions, without knowledge of material facts the Settling Defendants either knew or concealed.

### D.        Co-Lead Plaintiffs Are Adequate Class Representatives

Under Rule 23(a)(4), plaintiffs must also "fairly and adequately protect the interests of the class." Adequacy "'requires that Plaintiff demonstrate that [his] interests will not conflict with those of class members and that [his] counsel is qualified, experienced and able to vigorously conduct the proposed litigation.'" *Rodrigues*, 226 F.R.D. at 151. *See also Volkswagen*, 273 F.R.D. at 353. Only a conflict that goes to the very subject matter of the litigation will defeat a finding of adequacy.

The adequacy test is met here. Co-Lead Plaintiffs' interests are co-extensive, do not conflict with the Class Members' interests, and are typical of the claims of the Class. Substantial common questions of fact and law exist and the Co-Lead Plaintiffs' interests are aligned with those of the Class. Co-Lead Plaintiffs also retained experienced counsel to prosecute this case, and participated in all aspects of the litigation. Lead Counsel possess extensive experience in the area of securities litigation and are actively engaged in complex federal civil litigation. *See* Rothman Decl. ¶¶132-34; Declaration of Kara M. Wolke ("Wolke Decl."), at Ex. B (attaching Glancy firm résumé).

### E.        The Proposed Class Satisfies Rule 23(b)(3)

Rule 23(b)(3) authorizes certification where, in addition to the prerequisites of Rule 23(a), common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. *Amchem*, 521 U.S. at 591-94; *Volkswagen*, 273 F.R.D. at 353. This case easily meets Rule 23(b)(3)'s requirements.

### 1.    Common Questions of Law and Fact Predominate Over Individual Questions

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "The Rule 23(b)(3) predominance inquiry is satisfied 'unless it is clear that individual issues will overwhelm the common questions and render the class action valueless.'" *Volkswagen*, 273 F.R.D. at 353. "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625. The First Circuit does not require an "entire universe" of common issues, but does require a "sufficient constellation" of them. *Relafen*, 231 F.R.D. at 70.[7] As discussed above, there are a host of questions of law and fact, especially concerning the core inquiries of liability and loss causation, that are common to all members of the Class which Co-Lead Plaintiffs seek to represent. These questions clearly predominate over individual questions because the Settling Defendants' alleged conduct affected all Class Members in the same manner – by artificially inflating the price of Doral securities and damaging them once the truth was revealed. Thus, the predominance requirement is clearly met.

### 2.    Superiority Is Satisfied

The requirement of superiority "ensures that resolution by class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Relafen*, 231 F.R.D. at 70 (citing *Amchem*, 521 U.S. at 615). As further explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." 521 U.S. at 620. While no management problems were foreseen here, any such problems that may have existed or arisen are eliminated by the Settlement. In sum, because each of the other elements of Rule 23 are satisfied, a class action is the superior method of adjudicating Class Members' claims in this case.

---

[7] Variance among Class Members' damages does not defeat predominance. *Volkswagen*, 273 F.R.D. at 354.

- 17 -

## VII.   CONCLUSION

**FOR THE FOREGOING REASONS**, Co-Lead Plaintiffs respectfully request that this Court (1) grant final approval of the proposed Settlement and Plan of Allocation; (2) finally certify the proposed Class for purposes of the Settlement; (3) find that notice to the Class satisfied due process; and (4) enter the proposed Judgment and Order of Dismissal with Prejudice of this Action.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 20th day of June, 2016.

I hereby certify that on this date I presented *Co-Lead Plaintiffs' Unopposed Motion and Memorandum of Law for Final Approval of Class Action Settlement and Plan of Allocation and Final Certification of the Class for Settlement Purposes* to the Clerk of the Court for filing and uploading to the Court's CM/ECF system, which will send electronic notification of such filing to all counsel of record.

DATED:  June 20, 2016

THE LAW OFFICES OF ANDRÉS W. LÓPEZ, P.S.C.

s/ Andrés W. López

ANDRÉS W. LÓPEZ (USDC No. 215311)
P.O. Box 13909
San Juan, PR  00908
Telephone:  787/294-9508
787/294-9519 (fax)

*Liaison Counsel*

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
ROBERT M. ROTHMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

- 18 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

GLANCY PRONGAY & MURRAY LLP
LIONEL Z. GLANCY
PETER A. BINKOW
KARA M. WOLKE
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9160 (fax)

*Co-Lead Counsel for Plaintiffs*

JOHNSON & WEAVER, LLP
FRANK J. JOHNSON
110 West "A" Street, Suite 750
San Diego, CA 92101
Telephone: 619/230-0063
619/255-1856 (fax)
frankj@johnsonandweaver.com

*Additional Counsel for Plaintiffs*

- 19 -